IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD SWEATT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 14-cv-7891 |
| | ) | |
| UNION PACIFIC RAILROAD CO. | ) | Judge John Z. Lee |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ronald Sweatt claims that Defendant Union Pacific Railroad Company violated the Federal Rail Safety Act (FRSA), 49 U.S.C. § 20106 *et seq.*, by refusing his request that the company pay for surgery to treat his bilateral carpal tunnel syndrome, a condition Sweatt contends he developed in the course of his employment with Union Pacific. Union Pacific moves for summary judgment on the basis that Sweatt failed to file a timely administrative complaint. Sweatt responds that the FRSA's limitations period should not be measured from the day Union Pacific denied his initial request for surgery but should instead be measured from the day the company denied a subsequent request for the same surgery. For the reasons provided below, the Court grants Union Pacific's motion for summary judgment.

**I. Factual and Procedural Background**

The following facts are undisputed. Union Pacific, a railroad common carrier engaged in the business of interstate freight rail transportation, hired Sweatt in

2006. *Id*. Def.'s SOF ¶¶ 1, 6. Sweatt first reported to Union Pacific in 2009 that he had developed bilateral carpal tunnel syndrome. *Id*. ¶ 7. He attributed that injury to his work for Union Pacific. *Id*.

In January 2012, Sweatt's doctor prescribed bilateral carpal tunnel release surgery, and Sweatt requested that Union Pacific pay for this surgery. *Id*. ¶¶ 9, 14. Sometime in the summer of 2012, Union Pacific denied his request. *Id*.

In November 2012, Sweatt filed *Sweatt v. Union Pacific Railroad Co.*, No. 12 C 9579, 2014 WL 2536807 (N.D. Ill. Jun. 3, 2014) (*Sweatt I*). Among other claims, Sweatt claimed in *Sweatt I* that Union Pacific was liable under the Federal Employer's Liability Act (FELA) for his development of carpal tunnel syndrome. Def.'s SOF ¶ 8; Pl's SOF ¶ 1.

During a November 2013 deposition in *Sweatt I*, Sweatt's treating physician, Dr. Coats, testified that, to a reasonable degree of medical certainty, Sweatt's carpal tunnel syndrome is a work-related injury. Pl.'s SOF ¶ 2. The district court ultimately concluded that Sweatt's FELA claim was time-barred and granted summary judgment to Union Pacific. *See Sweatt*, 2014 WL 2536807, at *5–*6. The Seventh Circuit affirmed the decision on the same basis. *Sweatt v. Union Pac. R. Co.*, 796 F.3d 701, 707–08 (7th Cir. 2015).

Following Dr. Coats' November 2013 deposition, Sweatt's lawyer sent defense counsel a letter again requesting that Union Pacific approve the surgery. Pl.'s SOF ¶ 9. Union Pacific provided no formal response to this request, *id*. ¶ 8, but the

2

parties agree that the company consistently maintained its refusal to authorize payment for the proposed surgery, Def.'s SOF ¶ 18.

On January 31, 2014, Sweatt filed a complaint with the Occupational Safety and Health Administration (OSHA), claiming that Union Pacific's refusal to approve payment for the surgery that Dr. Coats' prescribed violated the FRSA. OSHA did not issue a final decision on Sweatt's complaint within 210 days of his filing, so Sweatt was permitted under the FRSA to bring his claim in federal district court. *See* 49 U.S.C. § 20109(d)(3).

## II. Analysis

The FRSA creates a private cause of action for "an employee who alleges discharge, discipline, or other discrimination in violation of subsection (a), (b) or (c) of this section." 49 U.S.C. § 20109(d)(1). Sweatt alleges in his complaint that Union Pacific's refusal to pay for surgery to treat his carpal tunnel syndrome "is a form of discrimination and retaliation in response to [his] good faith notification to defendant of his injury, of defendant's unsafe practices and procedures, and [his] efforts to follow a medical treatment plan." Compl. ¶¶ 19–21. He contends that the company has violated subsection (c) of the FRSA. That subsection provides:

> **(c) Prompt medical attention.**—
>
> **(1) Prohibition.**--A railroad carrier or person covered under this section may not deny, delay, or interfere with the medical or first aid treatment of an employee who is injured during the course of employment. If transportation to a hospital is requested by an employee who is injured during the course of employment, the railroad shall promptly arrange to have the injured employee transported to the nearest

3

>hospital where the employee can receive safe and appropriate medical care.

49 U.S.C. § 20109(c)(1). According to Sweatt, Union Pacific denied him appropriate medical care by refusing to pay for the surgery Dr. Coats prescribed.

Union Pacific has moved for summary judgment. A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court gives "the non-moving party the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP,* 719 F.3d 785, 794 (7th Cir. 2013).

Sweatt and Union Pacific agree that there is no factual dispute in this case. The nearest they have come to a factual dispute concerns Dr. Coats' opinion that Sweatt's carpal tunnel syndrome is a work-related injury. Sweatt accurately included in his statement of facts that Dr. Coats, during his 2013 deposition, attributed Sweatt's carpal tunnel syndrome to his work at Union Pacific. In response to Sweatt's statement of facts, Union Pacific clarified that the evidence in the record shows that Dr. Coats has held that opinion since 2009. Sweatt does not contest Union Pacific's clarification; rather, he places legal significance on the sworn nature of Dr. Coats' 2013 deposition testimony.

Because there is no genuine dispute of material fact in this case, the only question is whether Union Pacific is entitled to judgment as a matter of law. Union Pacific, rather than denying that its refusal of Sweatt's request for surgery could

4

constitute a violation of § 20109(c)(1), argues only that Sweatt's administrative complaint was untimely.

FRSA claims brought under § 20109 are subject to an administrative exhaustion requirement. *See* 49 U.S.C. § 20109(d)(2)(A) (importing procedures of § 42121(b)); *see Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 630 (4th Cir. 2015) (acknowledging exhaustion requirement); *Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 788 (8th Cir. 2014) (same). The administrative complaint must be filed with the Secretary of Labor, 49 U.S.C. § 20109(d)(2)(A), "not later than 180 days after the date on which the alleged violation of subsection (a), (b) or (c) of this section occurs," *id.* § 20109(d)(2)(A)(ii). Then, "if the Secretary of Labor has not issued a final decision within 210 days after the filing of the complaint and if the delay is not due to the bad faith of the employee," the employee may file "in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy." *Id.* § 20109(d)(3).

As explained above, Sweatt filed a complaint with OSHA (an agency of the Department of Labor) on January 31, 2014, and the agency did not issue a final decision within 210 days. To be timely, that complaint needed to be filed "not later than 180 days after the date on which the alleged violation" occurred, 49 U.S.C. § 20109(d)(2)(A)(ii), and Sweatt filed his complaint in January 2014, far too late for a claim based on the summer 2012 denial of his request for carpal tunnel surgery.

Sweatt agrees that Union Pacific would be entitled to summary judgment if he had not filed his administrative complaint within 180 days of the FRSA violation

5

he alleges. But he says that the violation alleged in his complaint is Union Pacific's denial of his subsequent request for surgery in November 2013—not the denial in 2012—and measured from the later denial, his complaint in January 2014 fell well within the limitations period.

In support, Sweatt contends that the 2013 denial was the sort of "discrete act" of discrimination described in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). In *Morgan*, a Title VII case, the Supreme Court held that every "discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* The point of the case was to distinguish discrete acts from "continuing violations." *Id.* at 14. (The limitations period for a continuing violation would not begin to run until the ongoing violation ceased.) Examples of discrete acts include "termination, failure to promote, denial of transfer, or refusal to hire," as well the issuing of individual paychecks that each reflect a policy of discrimination. *Id.* The so-called "paycheck accrual rule" has long been understood in the Seventh Circuit to mean that "a new cause of action for pay discrimination [arises] every time a plaintiff receive[s] a paycheck resulting from an earlier discriminatory compensation practice occurring outside the statute of limitations period." *Groesch v. City of Springfield, Ill.*, 635 F.3d 1020, 1027 (7th Cir. 2011).[1]

In response, Union Pacific contends that the discrete act triggering the limitations period was its denial of his request in 2012. The company stresses that the 180-day limitations period of § 20109(d)(2)(A)(ii) would be meaningless if Sweatt

---

[1] This broad understanding of the paycheck accrual rule was undercut by *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), but it was subsequently restored by Congress. *See Groesch*, 635 F.3d at 127–28.

6

could reset it simply by requesting the same surgery a second time and again being told "no."

The Court agrees with Union Pacific that its 2012 denial of Sweatt's request for surgery triggered the 180-day limitations period and that the denial of his 2013 request for the same surgery to treat the same injury did not restart it. Viewing the evidence in the light most favorable to Sweatt, the 2013 denial of his second request for the same surgery cannot be viewed as a "discrete act" within the meaning of *Morgan*. Unlike individual paychecks or the other acts discussed in *Morgan*, the denial of Sweatt's second request for the same surgery did not injure him afresh. Rather, the second denial changed nothing, and although Sweatt may be worse off the longer he is without treatment, a "lingering effect of an unlawful act is not itself an unlawful act . . . so it does not revive an already time-barred illegality." *Dasgupta v. Univ. of Wisconsin Bd. of Regents*, 121 F.3d 1138, 1140 (7th Cir. 1997).

Sweatt's situation is analogous to the situation presented in *Brown v. Unified School District 501, Topeka Public Schools*, 465 F.3d 1184, 1186 (10th Cir. 2006), a Title VII case. In *Brown*, the plaintiff was fired from his position as a physical education teacher and then asked the school district to rehire him. The school district informed him unequivocally that it would not consider him for rehire. He filed an EEOC charge about this refusal, but he did not file a lawsuit within the 90-day limitations period after receiving his right-to-sue notice. Instead, he again asked the district to rehire him, and the district again refused. He then filed a new EEOC charge and, upon receiving a second right-to-sue notice, filed a lawsuit. The

7

Tenth Circuit held that the plaintiff's lawsuit was untimely because the evidence showed that district's most recent refusal was a "mere reiteration" of the earlier refusal. *Id.* at 1188.

The parties in this case are in agreement that "Union Pacific's position that it would not authorize payment for the bilateral carpal tunnel release surgery has not changed since 2012." Def.'s SOF at ¶ 18. Sweatt contends that the company should have reconsidered its position after Dr. Coats testified in November 2013, but he does not dispute that it did not. Under these circumstances, Union Pacific's 2013 refusal, like the refusal to rehire at issue in *Brown*, was a "mere reiteration" of its earlier refusal and must not be treated as a second discrete act.

Accepting Sweatt's position would render the limitations period of 49 U.S.C. § 20109(d)(2)(A)(ii) a nullity because Sweatt would be able to restart the period as many times as he likes. This particular issue does not seem to have arisen in the FRSA context before, but similar attempts to get around the Title VII limitations period have been soundly rejected in *Brown* and other cases. *See, e.g.*, *Rivera-Diaz v. Humana Ins. of Puerto Rico, Inc.*, 748 F.3d 387, 391 (1st Cir. 2014) ("[I]f the proponent of a discrimination claim fails to sue within the specified ninety-day period, his claim expires and is not resuscitated by the filing of a second administrative charge."); *Brown*, 465 F.3d at 1186 ("If the claimant fails to file suit within the ninety-day window, the lapsed claims are not revived by including them in a second EEOC charge and restarting the process."); *Spears v. Missouri Dep't of Corr. & Human Res.*, 210 F.3d 850, 853 (8th Cir. 2000) (explaining that filing a

second EEOC charge based on the same facts alleged in an earlier one "does not remove th[e] bar" on suits filed more than 90 days after the initial right-to-sue notice was received); *Soso Liang Lo v. Pan Am. World Airways, Inc.*, 787 F.2d 827, 828 (2d Cir. 1986) ("We hold that whether the present action is time barred must be determined with reference to only the first Notice of Right to Sue. Otherwise, the time limitations of 42 U.S.C. § 2000e-5(f)(1) would be meaningless, because potential Title VII plaintiffs could evade those requirements simply by seeking additional Notices of Right to Sue whenever they pleased.").

Taking another tack, Sweatt also argues that he lacked a legal basis for bringing an FRSA claim until November 2013 when Dr. Coats was deposed. He asserts that he could not make out a prima facie case for a violation of § 20109(c)(1) before then because he needed Dr. Coats' testimony that his carpal tunnel syndrome is a work-related injury. But this argument has no legal or factual basis. It is undisputed that Sweatt and Dr. Coats have believed since 2009 that Sweatt's carpal tunnel syndrome was the result of his work for Union Pacific. (That belief was the basis for the lawsuit in *Sweatt I*, which Sweatt filed in November 2012.) Nothing in the FRSA suggests that a plaintiff must obtain sworn testimony from a doctor that an alleged injury is work-related before filing an administrative complaint. And even if such a requirement did exist, Sweatt could have sought an affidavit from Dr. Coats at any point since 2009.

A final issue raised by Sweatt in his complaint is that Union Pacific refused to pay for two of his doctor's appointments relating to his carpal tunnel syndrome.

9

Sweatt has never contended that these refusals constitute discrete violations of the FRSA, and he does not respond to the argument Union Pacific makes about these appointments in support of its motion for summary judgment. In fact, Sweatt does not mention the appointments at all in responding to Union Pacific's motion. Under these circumstances, the Court need not address this argument further. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

## IV. Conclusion

For the reasons provided herein, the Court grants Union Pacific's motion for summary judgment [23]. Civil case terminated.

**SO ORDERED**  ENTER: 1/12/16

    *[signature]*
    _____
    **JOHN Z. LEE**
    **United States District Judge**